# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DIVISION

| | |
|---|---|
| HYBIR, INC., §<br>*Plaintiff* §<br>§<br>v. §<br>§<br>DELL GLOBAL, B.V., DELL INC., §<br>DELL USA L.P., §<br>*Defendants* § | No. 1:22-CV-00472-LY |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court is Defendants Dell Global B.V., Dell Inc., and Dell USA L.P.'s (collectively "Dell") Motion to Dismiss, Dkt. 26, and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation recommending that the District Court grant Dell's motion as to Hybir's claim brought under the Computer Fraud and Abuse Act and deny the motion in all other respects.

### I.  BACKGROUND

This case concerns a years-long business relationship between Dell and Hybir that began July 2008. Dkt. 7, at 1. The relationship was governed by a Non-Disclosure Agreement ("NDA"), Master Relationship Agreement ("MRA"), and a Software Schedule. *Id.* at 1, 4. Under these agreements Dell licensed Hybir's Backup Engine

1

SDK Software ("Hybir software") to perform data deduplication functions in Dell's computer network backup system. *Id.* Dell terminated the relationship in August 2019. Dkt. 26, at 5.

During Dell's license and use of the Hybir software, Hybir provided updates and upgrades. Dkt. 7, at 5. The software, a demo application, and the upgrades and updates were made available in a shared directory accessible by certain Dell employees. *Id.* Hybir continually worked with these Dell employees implementing the software and applying it to Dell's backup system. *Id.* At times, Hybir made its software source code, known as VAST, available with the "understanding that this disclosure was protected under the MRA and Software Schedule." *Id.* at 6.

Hybir alleges Dell violated the parties' MRA, Software Schedule, and NDA, when its employees first disclosed, and then used Hybir's trade secrets and proprietary information to develop, market, and commercialize an allegedly derivative competing work known as FTA13. *Id.* at 7. Hybir states that FTA13 has many of the same features and functions of the Hybir software. *Id.* The trade secrets and proprietary information alleged to have been used by Dell includes Hybir's VAST code, and information about the operation and functionality of Hybir's software. *Id.* Hybir claims it was induced to provide these materials and information to certain Dell employees under the guise of its business relationship with Dell and in furtherance of Dell's license and use of the software. *Id.* Instead, Hybir claims, this information was shared with a wider group of Dell employees without its consent for the purposes of creating a competing product. *Id.*

2

Hybir sent written notice September 2019, notifying Dell of its alleged violations of the NDA, MRA, and Software Schedule. *Id.* at 7. Hybir's complaint states that it believes that Dell continues to use its trade secrets. *Id.* Hybir brings four causes of action for breach of the NDA, MRA, and Software Schedule, for misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001 et seq. ("TUTSA"), and for Computer Fraud and Abuse ("CFAA") under 18 U.S.C. § 1030. *Id.* at 7-11. Dell moves to dismiss Hybir's complaint for failure to state a claim. Dkt. 26, at 8. Dell argues Hybir's pleadings as to its breach of contract claim do not address which of Hybir's materials were covered by the identified contracts, nor state with sufficient particularity what Dell did to breach the contracts. *Id.* at 6. Further, Dell argues that Hybir's pleadings concerning the misappropriation of trade secrets claims do not adequately identify the trade secrets at issue, nor how Dell misappropriated those trade secrets. *Id.* at 6-7. Lastly, Dell moves to dismiss Hybir's CFAA claim arguing that it was not brought within the statute of limitations. *Id.* at 7.

## II.   LEGAL STANDARD

### A.   12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d

191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may

4

not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III.   DISCUSSION

#### A.   Breach of Contract Claim (Count 1)

Dell moves to dismiss Hybir's breach of contract claim on the basis that Hybir merely "recites the elements of a breach of contract claim," "just restates" sections of the NDA and Software Schedule and "asserts Dell acted to the contrary," and gives no indication of how, when, where, or through whom Dell is alleged to have violated the provisions of the agreements at issue. Dkt. 26, at 17. Dell states that Hybir's "vague" allusion to Dell's "use[] of the Hybir Software and Trade Secrets" is not covered by either the NDA or the Software Schedule. *Id.* Dell further states that under the MRA and NDA, "Deliverables" are excluded from the parties' confidentiality obligations and that it "cannot discern any possible contract theory in which 'the Hybir Software and Trade Secrets' [alleged to have been used] could include Deliverables" under the agreements at issue. *Id.* Dell argues that Hybir must identify the non-Deliverables it is alleged to have used in violation of the NDA. *Id.* As to Hybir's claim for breach under the Software Schedule, Dell acknowledges that the relevant provision applies to "Software" but argues that Hybir has alleged a breach based on the use of "the Hybir Software and Trade Secrets." *Id.* Dell contends that

5

the scope of "Trade Secrets" is so unclear that it cannot determine what materials Hybir alleges were misused in violation of the Software Schedule. *Id.*

To survive Dell's motion to dismiss its breach of contract claim, Hybir must allege: (1) the existence of a valid contract; (2) performance or tendered performance by the Hybir; (3) breach of the contract by the Dell; and (4) damages sustained by Hybir as a result of the breach. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Hybir's specific allegation concerning breach of the NDA is that in violation of Section 5 of the NDA, Dell "used the Hybir Software and Trade Secrets for purposes other than for the purpose of the parties' business relationship." Dkt.7, at 8. Section 5 of the NDA provides:

> The terms and conditions of this Agreement shall survive any such termination with respect to Confidential Information that is disclosed prior to the effective date of termination. The Parties receiving Confidential Information (each, a "Recipient") from the other Parties disclosing Confidential Information (each, a "Discloser") will use the Confidential Information only for the purpose of and in connection with the Parties' business relationship.[1]

Dkt. 7-3, at 2.

Hybir also alleges that Dell breached Section 2 of the Software Schedule, which is part of the MRA, when it used the Hybir software and trade secrets, including the

---

[1] The NDA defines Confidential Information as: "product and roadmap information, marketing, financial/pricing information, customer/vendor related data, services/support and other business information including, but not limited to information that has been made available to Discloser by third parties that Discloser is obligated to keep confidential, trade secrets, software, strategies, techniques, drawings, specifications, technical or know-how data, research and development, ideas, inventions, patent disclosures that may be disclosed between the Parties whether in written, oral, electronic, website-based, or other form." Dkt. 7-3, at 2.

software source code, VAST, to create a derivative work, FTA13. Dkt. 7, at 8. Section 2 of the Software Schedule provides:

> All Software is license[d] exclusively under the terms of the Agreement. Upon execution of this Schedule, Provider grants to Dell an irrevocable, nonexclusive, non-transferable, royalty-free, fully paid up (upon payment of the entire license fee), perpetual, worldwide, multi-language (provided Dell is responsible for translations from the English language), license to install, reproduce, deploy, use, perform, execute and run an unlimited number of copies of the Software and on an unlimited number of users, computers, servers and networks, owned or operated by or for Dell or its suppliers, customers and contractors, for Dell's internal business purposes and for purposes of providing services to Dell's customers but specifically EXCLUDING use of the Software for backup services or disaster recovery services except as needed for management of imaging ("License"). The License does not include any restrictions related to the numbers of users, sites, devices, or CPUs the Software is used or accessed by or any restrictions related to database sizes or the number of documents or transactions processed. The License includes the right to authorize contractors working on behalf of Dell to exercise the above rights for Dell's benefit.
>
> *Dell may not use, sell, sublicense, or otherwise reproduce the Software or Documentation, except as provided herein. Dell may not create derivative works of the Software.* Except as stated in this Section 2, Dell has no right, and will not permit any third party, to copy, adapt, reverse engineer, decompile, disassemble, modify, adapt or make error corrections to the Software in whole or in part except to the extent that any reduction of the Software to human readable form (whether by reverse engineering, decompilation or disassembly) is necessary for the purposes of integrating the operation of the Software with the operation of other software or systems used by the Dell. Dell will request Provider to carry out such action or provide such information before undertaking any such reduction.

Dkt. 7-5, at 3 (emphasis added).

The parties do not dispute that the NDA and MRA/Software Schedule are valid and enforceable contracts. Dkts. 7, at. 7; 35, at 10. Further, Hybir states that it performed its obligations under the NDA and MRA/Software Schedule. Dkt. 7, at 7.

7

Dell's motion does not dispute this. Hybir states that "as a direct and proximate result of Dell's breaches, Hybir has been and continues to be irreparably harmed, and has suffered and continues to suffer damages." *Id.*

Dell argues that Hybir describes the trade secrets at issue in a vague manner that does not suffice to give Dell fair notice. Dkt. 26, at 16. Hybir's complaint states that its trade secrets "include, but are not limited to, the confidential and proprietary processes, algorithm, data structures, techniques, and know-how embodied and used in the Hybir Software, including in the C# source code for the Hybir VAST Server Software, and otherwise conveyed to Dell under the MRA and other agreements (collectively, the 'Trade Secrets')." Dkt. 7, at 4. Hybir's complaint references and incorporates sealed Exhibit A, which contains a more detailed description of the trade secrets at issue. Dkts. 7, at 4; 7-2. Generally, Exhibit A describes certain backup and restore processes integral to the Hybir software and describes how the Hybir software deals with alternate data streams. Dkt. 7-2, at 3. Hybir's complaint also references and includes as an attachment the notice it sent to Dell September 2019, notifying Dell of its breach. Dkts. 7, at 7; 7-7. The letter identifies the VAST code as a trade secret and makes reference to information stored in a shared directory. Dkt. 7-7, at 6-7. As to Dell's argument that the MRA "excludes deliverables provided under the agreement from the parties' confidentiality obligations under the NDA," Hybir responds that "Deliverables, as defined by Section 1.2 of the MRA, **do not include** Provider [Hybir] Intellectual Property, which is the type of intellectual property at issue here. " Dkt. 35, at 12.

As for Hybir's description of Dell's breach, Hybir alleges that Dell: (1) developed a competing product with features similar to Hybir's software and that the software was created by the same team that became familiar with Hybir's trade secrets; (2) created a derivative work in violation of the MRA/Software Schedule; (3) copied Hybir's VAST code from a specific shared directory, where Hybir periodically distributed the VAST code to limited Dell employees with the understanding that the "disclosure was protected under the MRA and Software Schedule"; (4) placed the VAST Code on a shared directory and made it available to other Dell employees without Hybir's consent; (5) induced Hybir to provide confidential information about the functioning of the software under the guise of Dell's licensed permissible use of the software and the parties' business relationship. Dkt. 7, at 1, 6-7.

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322, (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp.2007)). Considering the complaint, as well as Exhibits 7-2 and 7-7, which include descriptions of the alleged trade secrets and descriptions of Dell's activity in violation of the relevant agreements, the undersigned finds that Hybir sufficiently identifies the trade secrets at issue and sufficiently describes Dell's alleged breach. Hybir's complaint, attached exhibits, and response to Dell's motion identify the existence of

9

a valid enforceable contract, provide that Hybir performed under the agreements, and allege specific actions that constitute breach of the contract. To the extent the parties disagree about whether the materials alleged to have been trade secrets under the terms of the agreement, are actually trade secrets, such a dispute is not suitable for resolution on a motion to dismiss. *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004) (stating the existence of a trade secret is a question of fact). The undersigned recommends that the District Court deny Dell's motion to dismiss Hybir's breach of contract claim.

### B. Misappropriation of Trade Secrets Under the DTSA (Count 2) and Texas Misappropriation of Trade Secrets Under the TUTSA, (Count 3)

Dell also moves to dismiss Hybir's misappropriation of trade secrets claims under the DTSA and TUTSA on the grounds that Hybir does not sufficiently plead which of its materials are actually trade secrets, nor what Dell did to misappropriate Hybir's trade secrets. Dkt. 26, at 6-7. Dell also argues that Hybir's TUTSA claim is duplicative of its breach of contract claim and "[a] plaintiff cannot proceed on a tort claim "when the only loss or damage is to the subject matter of the contract." *Id.* at 7 (citing *Educ. Mgmt. Servs. v. Cadero*, No. SA-14-CA-587, 2014 WL 12586781, at *2 (W.D. Tex. Nov. 18, 2014); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)).

To survive Dell's motion to dismiss its misappropriation of trade secrets claims, Hybir must sufficiently allege that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper

10

means, and (3) the defendant *used* the trade secret without authorization from the plaintiff." *CAE Integrated, L.L.C. v. Moov Techs., Inc.,* 44 F.4th 257, 262 (5th Cir. 2022). Under both the DTSA and TUTSA, a trade secret includes technical designs, patterns, plans, programs, codes methods, process, procedures whether tangible or intangible, whether or how stored or memorialized if the owner has "taken reasonable measures under the circumstances to keep the information secret" and "the information derives independent economic value, actual or potential from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.003(6).

Dell states that Hybir's complaint defines its trade secrets in a vague, unbounded manner such that Dell doesn't know which of Hybir's materials are considered trade secrets. Dkt. 26, at 9-10. As mentioned above, in addition to its Complaint, Hybir incorporates Exhibit A into its pleadings. The trade secrets at issue are described in more detail there, and thus, the undersigned disagrees with Dell that they cannot be clearly identified. *See* Dkt. 7-2, at 3, and discussion *supra* Part III.A.

Dell's next argument is that Hybir's description of its trade secrets includes technology that Hybir "publicly disclosed in a patent describing it's data deduplication technology." Dkt. 26, at 9-10. Dell points out that the trade secrets described in Exhibit A include a "backup process" and a "restore process" and that Hybir's patents also include a "backup" and "restore" process. Dkts. 26, at 11; 7-2, at 3. Dell also states that "Hybir's patent refers to a 'descriptor algorithm' that can

11

generate a hash corresponding to files or portions of files." Dkt. 26, at 12. Dell claims this function is "similar to the use of a hash described in Exhibit A." *Id.*

Hybir's complaint acknowledges that it holds patents that relate to "aspects of its source side data deduplication technology then in existence." Dkt. 7, at 11. However, Dell's motion "forgoes any meaningful comparison between the Trade Secrets defined in Exhibit A" of the complaint and the materials covered by Hybir's patents. Dkt. 35, at 14. Hybir claims that it does not argue that its trade secrets don't include some of the general processes described in the patents, but the trade secrets at issue in this case reflect "continued work performed by Hybir after filing its patent"—Hybir states that its description of the trade secrets included in its complaint and in Exhibit A reflect in more granular detail this continued work. *Id.*

While it is true that information is not "secret" when disclosed to the public in a patent, a patent only destroys the secrecy necessary to maintain a trade secret when the patent and the trade secret "both cover the same subject matter." *Wellogix, Inc. v. Accenture, L.L.P.,* 716 F.3d 867, 875 (5th Cir. 2013) (citing *Luccous v. J.C. Kinley Co.,* 376 S.W.2d 336, 340 (Tex. 1964); *Carbo Ceramics, Inc. v. Keefe,* 166 F. App'x 714, 719-20 (5th Cir. 2006)). To the extent Hybir's claims are based on information that was available and disclosed to the public in a patent, that information would not qualify as a trade secret for the purposes of Hybir's misappropriation claim. However, at this stage it is not Hybir's burden to show that its patents did not cover the same subject matter as the trade secrets at issue here. *Wellogix,* 716 F.3d at 875 ("Although Accenture maintains that it was Wellogix's burden to show that the patents did

12

not cover the same subject matter, Accenture does not cite, nor we could we find, case law imposing such a burden. Further, another circuit, in an unpublished opinion, held that it is for the defendant, once a plaintiff makes a *prima facie* case for the existence of a trade secret, to show that disclosure destroys the secret." (citing *Injection Research Specialists, Inc. v. Polaris, L.P.,* Nos. 97-1516, 97-1545 & 97-1557, 1998 WL 536585, at *8-9 (Fed. Cir. Aug. 13, 1998))). The undersigned finds that at this stage, Hybir has sufficiently alleged that a trade secret existed for the purposes of its misappropriation of trade secrets claim.

The second element of a misappropriation of trade secrets claim requires that the trade secret be acquired through "improper means." *CAE Integrated,* 44 F.4th at 262. Under the DTSA and the TUTSA, "improper means" "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(2).

Hybir states that the trade secrets at issue, such as the VAST code, were placed on a shared drive, from which the code was then copied and made accessible to other Dell engineers without Hybir's consent. Dkt. 7, at 6. Hybir also alleges that it was induced to provide information about the functionality of its software under the guise of the parties' ongoing relationship, when Dell was actually acquiring information to create its derivative work. *Id.* at 1-2. Dell's motion argues that Hybir "points to a single allegation of allegedly unauthorized copying. But that allegation fails as a matter of law because—even if it were true—the complaint makes clear that Hybir

had agreed to allow Dell access to the material at issue. Indeed, Hybir *gave it* to Dell." Dkt. 39, at 5. Dell argues that this implied authorization undermines Hybir's claims. *Id.* However, Hybir's complaint makes it clear that it allowed access to its VAST code and provided information about its software's functionality with the understanding that the code would be accessed only by those Dell employees with whom it regularly worked, and that its answers to Dell's questions about the software's functionality were provided in furtherance of Dell's licensed permissible use of the software. Dkt. 7, at 7. The undersigned finds that Hybir's pleadings sufficiently allege acquisition of Hybir's trade secrets through both a breach of a duty to maintain secrecy under the parties' NDA and MRA/Software Schedule and by misrepresentation, each considered "improper means" under the DTSA and TUTSA. 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(2).

As to "use," Dell states that Hybir makes only conclusory allegations of "use" without identifying facts that would support the conclusion" that Dell "used" Hybir's trade secrets. Dkt. 26, at 9. Generally, "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use[.]' ... Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret ... all constitute 'use'." *Wellogix,* 716 F.3d at 877 (quoting *Gen. Universal Sys. Inc. v. HAL Inc.,* 500 F.3d 444, 451 (5th Cir. 2007)). Hybir's complaint alleges that Dell used its trade secrets, including the VAST code

and information concerning the processes and functionality of the Hybir software to develop a derivative work. Dkt. 7, at 6. This qualifies as a "use" since it relates to production or development.

Considering Hybir's complaint and exhibits, and viewing them in the light most favorable to Hybir, the undersigned concludes that Hybir sufficiently alleges each element of its misappropriation of trade secrets claims to establish a facially plausible claim.

Dell's last argument as to Hybir's misappropriation claim is that Hybir does not allege that Dell "breached any duty to Hybir—besides breaching contractual provisions." Dkt. 26, 19. As a result, Dell argues, Hybir cannot recover under its TUTSA claim because the only injury the TUTSA claim seeks to remedy is the alleged breach of the NDA and Software Schedule. *Id.* (citing *Educ. Mgmt. Servs. v. Cadero*, No. SA-14-CA-587, 2014 WL 12586781, at *2 (W.D. Tex. Nov. 18, 2014) ("a party may not recover under a tort theory when 'the only loss or damage is to the subject matter of the contract.'")). Dell analogizes Hybir's claims to those at issue in *Education Management*, arguing that in that case, "a plaintiff alleged a violation of the TUTSA based solely on the misuse of information provided to the Defendant under a contract. The plaintiff did not allege that the defendant used any improper means to acquire the information at issue." Dkt. 26, at 18. In that case the district court dismissed the TUTSA claim: "[b]ecause the Plaintiff has not alleged facts establishing the breach of any legal duty independent of the non-disclosure agreement, its claims sound only in contract. Therefore, its misappropriation of trade secrets claim must be

15

dismissed." *Educ. Mgmt.*, WL 12586781 at *2 However, as Hybir points out in its response and as the undersigned has already found, Hybir does allege that Dell used improper means to acquire the trade secrets at issue, thus the reasoning in *Education Management* is inapplicable here. Hybir is not attempting to hold Dell liable under TUTSA based *solely* on Dell's alleged breach of the contractual provisions. Instead, Hybir states that its claims under TUTSA "arise from certain Dell employees' unauthorized access to Hybir's proprietary information/technology through the improper copying of the Software and disclosure of Trade Secrets." Dkt. 35, at 16. The undersigned finds that this claim is separate from its breach of contract claim and Hybir's TUTSA claim should not be dismissed as duplicative of the breach of contract claim.

### C. Computer Fraud and Abuse Act Claim (Count 4)

Under the CFAA "[n]o action may be brought under this subsection [of the CFAA] unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). Dell's motion states that "[a]ll of the accused conduct in Hybir's Complaint occurred before August 2019" and "[t]his lawsuit was filed more than two years later in May 2022." Dkt. 26, at 20. Dell argues that Hybir's suit does not comply with the two-year statute of limitations in the CFAA and should be dismissed with prejudice. *Id.* at 20. Hybir replies that it "will withdraw" its CFAA claim and that "the Court will not need to adjudicate this issue." Dkt. 35, at 16-17. Hybir makes no further arguments concerning its CFAA claim, nor Dell's request that the CFAA claim be dismissed with prejudice. The

undersigned recommends that the District Court grant Dell's motion as to Hybir's CFAA claim and dismiss that claim with prejudice. *Rodriguez v. United States,* 66 F.3d 95, 97 (5th Cir. 1995) (finding courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss.).

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Dell's Motion to Dismiss, Dkt. 26. Specifically, the undersigned recommends that the District Court **GRANT** Dell's motion to dismiss Hybir's CFAA claim. The undersigned further recommends that the District Court **DISMISS WITH PREJUDICE** Hybir's CFAA claim because further amendment will not cure Hybir's defective claim. The undersigned recommends that the District Court **DENY** Dell's motion to dismiss as to all other claims.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review

by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED January 31, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE